UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN WILKINS,

    Plaintiff,

v.                                                  Case No. 1:23-cv-700

                                                      Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

## OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On September 10, 2020, plaintiff filed a application for DIB with an alleged disability onset date of June 27, 2019. PageID.38. Plaintiff later amended the onset date to May 8, 2020. *Id*. Plaintiff identified 10 disabling conditions. PageID.235.[1] Prior to applying for benefits, plaintiff completed a GED and had past relevant work as an operating engineer (heavy equipment operator). PageID.52, 236-237. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 18, 2021.

---

[1] Plaintiff listed the following conditions: irreparable left bicep tear; left rotator cuff injury s/p surgery; right knee injury s/p replacement; left knee arthritis with ACL tear; right shoulder injury and arthritis; chronic kidney disease stage three; depression; high blood pressure; left ankle injury sequela s/p fractures; and low white platelet and easy bleeding. PageID.235.

1

PageID.38-54. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months". *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant

is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff meets the insured requirements of the Social Security Act through December 31, 2024, and that he has not engaged in substantial gainful employment since his amended onset date of May 8, 2020. PageID.40. At the second step, the ALJ found that plaintiff has severe impairments of: left shoulder and bicep injuries; right knee degenerative joint disease; cervical and lumbar spondylosis; hypertension; chronic kidney disease, stage III; and obesity. *Id*. At the third step, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.44.

The ALJ decided at the fourth step that,

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally climb ramps and stairs; never climb ladders or scaffolds; occasionally balance, stoop, kneel and crouch; never crawl; lift/carry up to 10 pounds occasionally and five pounds frequently with the left upper extremity and perform no above-shoulder reaching or lifting (no limitations with the right upper extremity); frequently as opposed to continuously handle; occasionally push, pull and reach other than overhead; and tolerate no concentrated exposure to vibration.

PageID.45. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.52.

At step five, the ALJ determined that plaintiff could perform other, unskilled jobs existing in the national economy at the light work exertional level. PageID.53. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy

4

such as electronics worker (25,000 jobs), bench assembler (30,000 jobs), and garment sorter (25,000 jobs). PageID.53. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from May 8, 2020 (the amended alleged disability onset date) through November 18, 2021 (the date of the decision). PageID.54.

### III. DISCUSSION

Plaintiff raises three errors on appeal.

**A. The ALJ failed to properly weigh the opinions from Dr. Sytsma, Dr. Kokmeyer, and PA-C Boothe based on the regulatory factors by failing to consider whether the opinions were supported and consistent with the record at the time they were rendered.**

The ALJ is charged with the responsibility of determining the residual functional capacity (RFC) based on his evaluation of the medical and non-medical evidence. *Rudd v. Commissioner of Social Security*, 531 Fed. Appx. 719, 728 (6th Cir. 2013). RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Here, plaintiff contends that the RFC is incorrect because the ALJ failed to properly weigh the medical opinions from Mark Sytsma, M.D., Steven F. Kokmeyer, M.D., and Lauren A. Boothe, PA-C. These opinions limited plaintiff to lifting no more than 5 pounds maximum on the left upper extremity, with repeated periods where he was required to wear a sling at all times. For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. §

5

404.1520c(a).  In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b).  In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors.  *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency."  20 C.F.R. § 404.1520c(b)(2). The regulations explain "supportability" as, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  The regulations explain "consistency" as, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

As an initial matter, plaintiff cited temporary work restrictions from PA-C Boothe and Dr. Kokmeyer related to plaintiff's recovery from the August 2019 surgery "which involved a left shoulder arthroscopy with rotator cuff repair, distal clavicle excision, and open biceps tenodesis."  PageID.46. These restrictions are not relevant, having been issued before plaintiff's amended onset date of May 8, 2020.[2]

---

[2] On August 23, 2019, PA-C Boothe scheduled plaintiff for a 4-5 week follow-up visit, noting that he had a sling "for the rotator cuff and biceps tenodesis recovery" and stating "[a] work note was written for him in the office today for no work about the left upper extremity."  PageID.455. On September 20, 2019, PA-C Boothe scheduled a 6-week follow-up visit, noted that "[a]fter 1 week in the sling he may come out of the sling and start passive range of motion",

6

>   During the relevant time period, Dr. Sytsma wrote a two-sentence "to whom it may concern" letter dated June 30, 2021, which included a work restriction for overhead lifting:
>
>> As [plaintiff] has opted not to pursue surgical intervention, he may work with PERMANENT restrictions as follows: Maximum 20 pound overhead lifting. No restrictions with lifting below shoulder level.
>
> PageID.749. The ALJ's decision addressed this lifting restriction, as well as other restrictions set forth in Dr. Sytsma's medical notes:
>
>> In a June 2021 letter from treatment provider Mark Sytsma, MD, he opined the claimant was limited to lifting 20 pounds overhead and he had no restrictions with lifting below shoulder level (Ex. 22F). These opinions are unpersuasive because they are not supported by the exam findings he noted in his records at the time the opinions were given (Ex. 21F). Further, the opinions are inconsistent with the restrictions he imposed throughout the course of his treatment with the claimant, as discussed below (Ex. 4F/11,32; 5F/3; 6F; 10F; 12F; 14F/9; 15F/2-4; 19F/1-2). For instance, as recent as March-May 2021, the provider restricted the claimant to no lifting greater than 10 pounds below the shoulder with the left upper extremity (Ex. 12F; 15F/2-4; 19F/1-2). At the very least, the opinions provide no supporting explanation for why the degree of restrictions changed from those previously imposed. It is also worth noting that these opinions are limited to lifting, and the provider offered no information as to the claimant's ability to perform any other functional activity.
>>
>> I also note that there are several notes by Mark Sytsma, MD in the record that imposed varying degrees of lifting restrictions on the claimant throughout the relevant period (Ex. 4F/11,32; 5F/3; 6F; 10F; 12F; 14F/9; 15F/2-4; 19F/1-2). These were specifically referenced in the claimant's representative's brief (Ex. 14E/2). These restrictions appear to be durational in nature, in that they were temporary and appeared largely tied to the claimant's surgical status. They did not describe the claimant's abilities and limitations on a sustained basis, and they are inconsistent with the permanent restrictions opined to by Dr. Sytsma in Exhibit 22F. Accordingly, they are not opinions for purposes of this decision.
>
> PageID.51-52.

---

and that another work note was written for him "about the left upper extremity." PageID.454. On December 23, 2019, Dr. Kokmeyer referred to a work note "to increase weight limit to 4 pounds on the left side" and a "follow up in 4 weeks when he is done with physical therapy to recheck." PageID.451.

For the reasons stated on the record, substantial evidence supports the ALJ's finding that Dr. Sytsma's June 30, 2021 opinion is unpersuasive.

Next, plaintiff points out that before he issued this permanent restriction, Dr. Sytsma had issued a series of restrictions which lasted for more than 12 months.[3] Plaintiff contends that the ALJ should have considered these restrictions as the basis for a closed period of disability. *See e.g., Lang v. Secretary of Health and Human Services*, 875 F.2d 865 (6th Cir. 1989) ("we find the Secretary erred in failing to consider whether plaintiff might be entitled to a closed period of disability"). Plaintiff's contention is without merit. Distinct periods of recuperation cannot be added together to satisfy the 12-month durational requirement of 42 U.S.C. § 423(d)(1)(A). *See Maher v. Secretary of Health and Human Services*, 898 F.2d 1106, 1109 (6th Cir. 1989) ("When

---

[3] These are the lifting restrictions which the ALJ identified as set forth in Ex. 14E/2 (PageID.318):

Dr. Sytsma has issued various restrictions for the left shoulder since work injury occurred. The second surgery was on April 14, 2020, a few weeks before the alleged onset date, and he was taken off work. See Exhibit 4F/25- 28. On September 11, 2020, Dr. Sytsma stated he could return to work with a 5-10lb below left shoulder lifting restriction. See Exhibit 6F. The third surgery was on October 8, 2020. See Exhibit 9F/23-25. Dr. Sytsma took Mr. Wilkins off work until January 7, 2021. See Exhibit 9F/7-11. On January 8, 2021, he issued a restriction of 5lb bellow the shoulder lifting. Id. at 7-8. He continued this restriction on February 15, 2021. See Exhibit 10F.

Dr. Sytsma changed the restriction on March 17, 2021, to no lifting greater than 10lbs below shoulder level only with the left upper extremity. See Exhibit 12F. This restriction was continued on April 14, 2021, and May 14, 2021. See Exhibits 15F/2-4 and 19F/1-2. On his last exams with Dr. Sytsma he noted reduced range of motion, reduced strength with fatigueability, and crepitance. See Exhibit 19F. His physical therapy discharge around this same time also notes a popeye deformity of the left bicep and limited range of motion and reduced strength affecting reaching to shoulder level or above. See Exhibit 21F.

When Mr. Wilkins cancelled the fourth surgery with Dr. Sytsma, Dr. Sytsma issued a restriction permanent restriction of maximum 20lb overhead lifting, no restrictions with lifting below shoulder level on June 30, 2021. See recently submitted records from Bronson Sports Medicine. It is unclear why Dr. Sytsma's restriction changed when Mr. Wilkins' condition had not. Mr. Wilkins' workers compensation nurse case manager was in contact with Dr. Sytsma. The permanent restriction was issued at her request – it was not generated during an office visit with Mr. Wilkins.

The Court notes that plaintiff's argument incorrectly referred to the original alleged onset date (June 27, 2019) rather than the amended onset date (May 8, 2020), stating that the ALJ erred by focusing on Dr. Sytsma's June 2021 opinion ("one piece of evidence dated 2 years after Plaintiff [sic] alleged onset date"). *See* Plaintiff's Brief (ECF No. 8, PageID.768).

8

dealing with physical symptoms, courts have held that if the underlying impairment is insufficient to be disabling to a particular claimant, claimant's hospitalization and periods of recuperation represent separate and distinct periods of disability which cannot satisfy the statutory requirement of continuous disability for twelve months or more."). Accordingly, this claim of error is denied.

### B. The ALJ erred by relying on vocational testimony that conflicted with the Dictionary of Occupational Titles, and by failing to obtain a reasonable explanation for the conflict.

At step five of the sequential evaluation, "an ALJ can rely on the DOT to establish that work exists in the national economy." *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313, 317 (6th Cir. 2020). While the DOT contains potentially obsolete job descriptions, "The current regulation governing this inquiry lists the DOT as a source of 'reliable job information.' 20 C.F.R. § 404.1566(d)(1)." *Id*. In addition, an ALJ can rely on vocational expert (VE) testimony. "All that is required before an ALJ can rely on vocational evidence provided by a vocational expert is that the ALJ either ensure that the evidence does not conflict with the information in the DOT or obtain a reasonable explanation for any conflict." *Id*.

Plaintiff contends that the ALJ erred in evaluating the VE's testimony because he identified an apparent conflict with the DOT but failed to obtain a reasonable explanation from the VE. Plaintiff's claim is without merit. After the ALJ obtained the VE's testimony regarding work that plaintiff could still perform, the ALJ asked the VE, "Could you explain what, if anything, would be either inconsistent with or just not directly addressed by the DOT?" PageID.89. The VE responded,

> "Yes, Your Honor. The unilateral upper extremity restrictions, as well as the directional restrictions for the left over-shoulder. And those just differ from the DOT because they're not addressed unilaterally or directionally. So I, my responses are based on my professional experience as well as my familiarity with the jobs I have cited."

9

*Id*. The ALJ addressed the potential conflict with the DOT in his decision, stating:

> Pursuant to SSR 00-4p, I determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles, and any of the limitations that are not included in the DOT or those that fall outside the DOT, including the claimant's ability to occasionally (instead of frequently) reach, are based upon her education, knowledge, and professional experience in placing people in the job market.

PageID.53. The ALJ reviewed the matter and determined that the VE's testimony did not conflict with the DOT. Accordingly, plaintiff's claim of error is denied.

### C. The ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of plaintiff's limitations, and failed to properly consider his subjective complaints and the functional limitations caused by his severe impairment.

Plaintiff contends that the ALJ did not properly consider his subjective complaints. Plaintiff referred to the evaluation process set out in SSR 16-3p, which sets out the two-step process for evaluating an individual's symptoms: (1) "We determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms;" and, (2) "We evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). *See* 20 C.F.R. § 404.1529(c)(1) and (2). In addition, the Commissioner considers other evidence including:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

10

20 C.F.R. § 404.1529(c)(3).

Here, the ALJ set out plaintiff's allegations as follows:

> The claimant alleges he is unable to perform full-time work on a sustained basis due to irreparable left bicep tear, left rotator cuff tear status-post surgery, right knee injury status-post replacement, left knee arthritis with ACL tear, right shoulder injury and arthritis, chronic kidney disease stage three, depression, high blood pressure, left ankle injury sequela status post fracture, and low white platelet/easy bleeding, causing symptoms of pain and weakness (Ex. 1A/2, 8; 4A/1, 7). In a function report, the claimant alleged limitations with lifting, bending, standing, reaching, walking, climbing stairs, completing tasks, and using his hands (Ex. 4E/6; 8E/6). He alleged he was not able to lift a gallon of milk, nor could he lift his grandchildren (Ex. 8E/2). Overall, I find the claimant's allegations are not entirely consistent with the evidence of record, to the extent that he alleges these limitations are entirely work-preclusive.

PageID.46.

After performing an extensive review of plaintiff's medical record (PageID.46-49), the ALJ found that plaintiff "has made inconsistent statements regarding the intensity, persistence, and limiting effects of his symptoms to his treating providers and the Social Security Administration" and that "such inconsistencies suggest that the information provided by the claimant generally may not be entirely reliable." PageID.49. In this regard, the ALJ mentioned: that plaintiff described daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms; the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual; that plaintiff received relatively little treatment for his neck, back, and knee pain; and, that "while the claimant has undergone three surgeries and continues to have ongoing symptoms in his left shoulder, the record generally supports that he retained the ability to do some degree of functional use of his left arm." PageID.49-50. The ALJ found that, "[b]ecause of these inconsistencies, I find that the claimant's

11

statements concerning the intensity, persistence, and limiting effects of his alleged symptoms are not fully supported by the record (See SSR 16-3p)." PageID.50.

> Ultimately, the ALJ concluded that,
>
> Overall, I find it consistent with the record that the claimant has been subject to a degree of pain and functional limitations, and the residual functional capacity was reduced to accommodate these limitations. For instance, due to the claimant's left shoulder impairment, he has been limited to a reduced range of light exertional level work, with no climbing of ladders or scaffolds, no crawling, no more than 10 pounds of occasional lifting/carrying and five pounds of frequently lifting with the left upper extremity, no above-shoulder reaching or lifting, frequent handling, no more than occasional pushing/pulling/reaching other than overhead, and no concentrated exposure to vibration. Due to the claimant's alleged pain and limitations related to his right knee impairment, he has been limited to a reduced range of light exertional level work, with no more than occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; occasional balancing, kneeling, and crouching; no crawling; and no concentrated exposure to vibration. Due to the claimant's cervical and lumbar spine spondylosis, in conjunction with his obesity, he has been limited to a reduced range of light exertional level work, with no more than occasional climbing of ramps and stairs; no climbing of ladders or scaffolds; occasional balancing, kneeling, and crouching; no crawling; and no concentrated exposure to vibration. Due to the claimant's chronic kidney disease and hypertension, he has been limited to a reduced range of light exertional level work, with reduced climbing, balancing and other postural activities; and no concentrated exposure to vibration.

PageID.52.

Plaintiff contends that the ALJ failed to explain how his daily activities are inconsistent with his allegations and made vague, unexplained or unsupported assertions that "he retained the ability to do some degree of functional use of his left arm." *See* PageID.50; Plaintiff's Brief at PageID.772-773. Plaintiff's claim is without merit. Here, the ALJ's conclusion is supported by substantial evidence and based on the record as a whole. *See* RFC Discussion, PageID.46-49. As the Sixth Circuit observed in *Showalter v. Kijakazi*, No. 22-5718, 2023 WL 2523304 at *5 (6th Cir. March 15, 2023), "[t]he ALJ's opinion is no drive-by analysis." Plaintiff's disagreement with the ALJ's ultimate determination does not undermine the fact that the ALJ used

12

the correct legal standard and had substantial evidence to support his determination. *See Cutlip*, 25 F.3d at 286 (if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion). Accordingly, plaintiff's claim of error is denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated: September 20, 2024          /S/ Ray Kent
                                   RAY KENT
                                   United States Magistrate Judge